# IN THE UNITED STATES DISTRICT COURT
## FOR THE NORTHERN DISTRICT OF OHIO
### EASTERN DIVISION

| | | |
|---|---|---|
| ERIC R. WILSON, | ) | CASE NO. 1:12-cv-01554 |
| | ) | |
| Petitioner, | ) | JUDGE SARA LIOI |
| | ) | |
| v. | ) | MAGISTRATE JUDGE GREG WHITE |
| | ) | |
| WARDEN, ROSS CORRECTIONAL | ) | |
| INSTITUTION, | ) | |
| | ) | **REPORT AND RECOMMENDATION** |
| Respondent. | ) | |

Petitioner, Eric R. Wilson ("Wilson"), challenges the constitutionality of his conviction in the case of *State v. Wilson*, Cuyahoga County Court of Common Pleas Case No. CR 518393. Wilson, *pro se*, filed his Petition for a Writ of Habeas Corpus (ECF No. 1) pursuant to 28 U.S.C. § 2254 on April 27, 2012.  On October 4, 2012, the Warden of the Ross Correctional Institution ("Respondent") filed his Answer/Return of Writ.  (ECF No. 10.)  Wilson, despite seeking and receiving an enlargement of time until January 13, 2013, did not file a Traverse.  (ECF No. 12.) For reasons set forth in detail below, it is recommended that Wilson's petition be DENIED.

## I.  Summary of Facts

In a habeas corpus proceeding instituted by a person in custody pursuant to the judgment of a state court, factual determinations made by state courts are presumed correct.  28 U.S.C. § 2254(e)(1); *see also House v. Bell,* 283 F.3d 37 (6th Cir. 2002).  The state appellate court summarized the facts underlying Wilson's conviction as follows:

[*P4]  At trial, the state presented the testimony of the victim, L.C.; K.H., who was with the victim and the appellant throughout the relevant time; Cleveland police officer Alencia Small-Smith; and Cleveland police detective Charlie McNeeley.  The defense presented the testimony of appellant's friends, Jose Rivera, James Woodruff, and Mary Keith.

[*P5]  L.C. testified that she was 18 years old at the time of the events at issue. On the evening of June 23, 2007, she was walking down East 55th Street toward Kinsman to get on a bus.  Appellant, who she knew only as "Big," pulled up beside her in a silver, four-door car and ordered her to get in.  She saw that he had a gun in his lap.  K.H. was in the front seat and moved to the back. L.C. got into the front seat.

[*P6]  Appellant drove the two women to a house on Holmden on the west side of Cleveland. It was approximately 6:00 or 7:00 p.m.  A tall skinny man opened the door and they went inside. The tall, skinny man then went down to the basement. Appellant instructed both women to undress. He held a pair of pliers and asked L.C. which nipple she wanted him to cut and told her that : "he was going to cut [her] clit[oris] off."  He raped her vaginally and anally.  They were at that house for approximately 20 to 30 minutes.  They were then allowed to dress and appellant drove them to a house on Grand.

[*P7]  There were three other people at the house on Grand when they arrived: a girl named Kisha, "a guy," and a woman appellant called his mom.  Appellant took L.C. and K.H. upstairs to a room that contained two mattresses, locked the door, and made them undress.  He made L.C. and K.H. "give him oral sex there and made [them] have sex with him."  Appellant fell asleep.

[*P8]  The following morning, appellant told L.C. to take a shower.  She pretended to get in the shower, but she climbed out the window and went to a shopping center nearby where she called the police.  The police took a statement from her and took her to a hospital, but a rape kit was not done.

[*P9]  L.C. saw appellant on a television news program in September 2007.  She called Cleveland police detective McNeeley to inform him.  She chose appellant's photograph from a photo array.

[*P10]  Officer Alencia Small-Smith testified that she and her partner responded to L.C.'s call.  L.C. showed them the house on Grand where the events took place. The police knocked on the door, but got no answer.  They also looked for appellant's car, but did not find it.  They then took L.C. home, then to Lutheran Hospital.

[*P11]  K.H. testified that she had been friends with appellant for a few weeks

beginning in the April before these crimes occurred. She saw him a few times each week. However, she said she "got scared" and avoided his calls after that. K.H. testified that she had just gotten home on June 23, 2007 when she heard a car horn outside. She went out and saw that it was appellant. Kisha was in the car with him. Appellant got out of the car and told K.H. that she owed him money. Appellant struck her and hit her head against a pole. He then made her get in his car. He drove around with her all day. She did not feel free to leave because he had a gun in the car.

[*P12] Late that afternoon, appellant made a U-turn. He grabbed a woman and made her get in the front seat of the car while K.H. moved to the back. Appellant took the two women to a house on Holmden, off West 25th Street. Appellant made the two women undress. He made K.H. lie on the floor and perform oral sex on L.C. while L.C. performed oral sex on appellant. Appellant said L.C. owed him money. Appellant also penetrated L.C. anally. Appellant then instructed them to get dressed, and drove them to his house on Grand Avenue.

[*P13] At the Grand Avenue house, appellant gave both L.C. and K.H. a T-shirt and panties to sleep in and left them alone in a room upstairs. They talked about how to get away. Appellant came into the room with Kisha. Kisha went to sleep while appellant made both women perform oral sex on him. K.H. then fell asleep. Appellant woke her up the following morning. He was very angry and pushed her outside and into his car.

[*P14] Detective McNeeley testified that he determined that Mary Keith lived in the house on Grand Avenue. Keith was also the owner of a house on Holmden.

*State v. Wilson*, 2010 Ohio App. LEXIS 5065, 2010-Ohio-6015 at ¶¶4-14 (Ohio Ct. App., Dec. 9, 2010).

## II. Procedural History

### A. Conviction

In September of 2008, a Cuyahoga County Grand Jury charged Wilson with five counts of rape in violation of Ohio Revised Code ("O.R.C.") § 2907.02(A)(2) together with sexually violent offender and firearm specifications, and two counts of kidnapping in violation of O.R.C. § 2905.01(A)(4) together with sexual motivation, sexually violent offender, and firearm specifications. (ECF No. 10, Exh. 3.)

On or about July 16 , 2009, a jury found Wilson "guilty of three counts of rape with sexually violent predator specifications, but not guilty of the attached three-year firearm specifications.  The jury also found [Wilson] guilty of kidnaping with a sexual motivation specification and a sexually violent predator specification, but not guilty of the attached three-year firearm specifications.  The jury was unable to reach a verdict as to two of the rape counts and the one year firearm specifications.  The state dismissed those charges and specifications, with prejudice."  *Wilson*, 2010 Ohio App. LEXIS 5065 at ¶15.

Wilson was sentenced to "a term of 20 years imprisonment on each of the kidnaping charges, to be served concurrently with one another and consecutive to a term of life imprisonment on each of the rape counts.  All terms of imprisonment were to be served consecutively to the sentences appellant was already serving in three other cases."  *Id*. at ¶16.

**B.  Direct Appeal**

On August 14, 2009, Wilson, through newly assigned counsel Paul Mancino, Jr., filed a Notice of Appeal with the Court of Appeals for the Eighth Appellate District ("state appellate court").  (ECF No. 10, Exh. 2.)  Wilson raised twelve assignments of error, which the state appellate court summarized as follows:

(1) he was denied due process when he was convicted of one count of rape but acquitted of two other counts of rape that allegedly occurred on the same date;

(2) the court conducted an inadequate inquiry regarding his request to represent himself;

(3) the court erred by allowing the state to introduce evidence of other "bad acts" committed by the defendant;

(4) the court erred by failing to give the jury a limiting instruction about this other acts evidence;

-4-

(5) the court erred by allowing testimony of other sexual activity by the defendant;

(6) the court erred by failing to instruct the jury that it was required to agree about the kind of sexual conduct involved in each offense;

(7) the court erred by denying appellant's motion for a judgment of acquittal;

(8) the court should have merged the two kidnaping counts into a single offense;

(9) the court erred by imposing a sentence of life imprisonment;

(10) the court erred by imposing consecutive sentences;

(11) the sexually violent predator specification was inadequate; and

(12) the evidence was insufficient to support his conviction on the sexually violent predator specification.

*Wilson*, 2010 Ohio App. LEXIS 5065 at ¶1.

On December 9, 2010, on reconsideration, the state appellate court affirmed Wilson's convictions, but vacated the sentences which were found erroneous as a matter of law.  The case was remanded for resentencing.[1]  *Wilson*, 2010 Ohio App. LEXIS 5065 at ¶¶28-29, 33.

On January 18, 2011, Wilson filed a Notice of Appeal with the Supreme Court of Ohio. (ECF No. 10-20, Exh. 19.)  Wilson raised the following propositions of law:

I.     A defendant has been denied due process of law when he is indicted on identical indictments for rape and counts are dismissed after jeopardy is

       attached.

II.    A defendant has been denied his sixth amendment right to counsel or self-representation when a court inadequately inquires of a defendant

---

[1]  The decision dated December 9, 2010 vacated the state appellate court's earlier decision of October 21, 2010.  According to Respondent, Wilson has not yet been resentenced.  (ECF No. 10 at 53.)

concerning self-representation.

III. A defendant has been denied a fair trial when the court permits evidence concerning other bad acts involving a non-indicted person.

IV. A defendant has been denied a fair trial when a court allows evidence of unindicted sexual activity involving a defendant.

V. A defendant has been denied due process of law when the jury has not been required to unanimously agree concerning claims of sexual conduct.

VI. A defendant has been denied due process of law when insufficient evidence has been offered to prove guilt beyond a reasonable doubt.

VII. A defendant has been denied due process of law when he is subjected to multiple punishments when the court fails to merge the kidnapping counts.

VIII. A defendant has been denied due process of law based upon an allegation of being a sexually violent predator which failed to allege any elements of that enhancement.

IX. A defendant has been denied due process of law when he has been sentenced as a sexually violent predator when the prosecution has failed to offer evidence to support all elements needed for that determination.

(ECF No. 10-21, Exh. 20.)

On April 20, 2011, the appeal was dismissed as not involving any substantial

constitutional question.  (ECF No. 10-23, Exh. 22.)

**C.    Federal Habeas Petition**

On April 27, 2012, Wilson filed a Petition for Writ of Habeas Corpus and asserted the

following grounds for relief summarized below:

GROUND ONE: Petitioner was denied "due process requirement of notice" when he was indicted with "carbon copy indictments not providing Defendant with adequate notice of charges against [him]."

GROUND TWO: Petitioner was deprived of his right to self-representation and the trial court failed to conduct an adequate inquiry into his request.

-6-

GROUND THREE: Petitioner was deprived of due process when the trial court permitted introduction of "prior bad acts."

GROUND FOUR: Petitioner was deprived of due process when the trial court failed to give limiting instructions regarding the evidence of "prior bad acts."

GROUND FIVE: Petitioner was deprived of due process and a fair trial when the trial court permitted the introduction of "unindicted sexual conduct unrelated to the offenses charged."

GROUND SIX: Petitioner was deprived of due process when the trial court failed to instruct the jury that it was required "to determine the sexual conduct ... element by unanimous agreement."

GROUND SEVEN: Petitioner's motion for judgment of acquittal was improperly denied where all the elements of the offense were not found beyond a reasonable doubt.

GROUND EIGHT: Petitioner was denied due process and "subjected to Double Jeopardy" when the trial court refused to merge allied offenses of similar import stemming from the same conduct.

GROUND NINE: Petitioner was deprived of due process when the trial court sentenced him to a life sentence rather than the definite sentence required by law resulting in a "cruel and unusual punishment."

GROUND TEN: Petitioner was deprived of due process when the trial court imposed consecutive sentences without considering the statutory criteria.

GROUND ELEVEN: Petitioner was deprived of due process when the trial court designated him as a sexually violent predator where the indictment "failed to contain [an] allegation of any of the elements of the sexually violent predator enhancements."

GROUND TWELVE: Petitioner was deprived of due process when all the elements of the sexually violent predator specification "were not supported by a shred of evidence by the state."

(ECF  No. 1.)

### III.  Exhaustion and Procedural Default

**A.    Exhaustion Standard**

Petitioners must exhaust their state remedies prior to raising claims in federal habeas corpus proceedings.  *See* 28 U.S.C. § 2254(b),( c).  This requirement is satisfied "when the highest court in the state in which the petitioner was convicted has been given a full and fair opportunity to rule on the petitioner's claims."  *Manning v. Alexander*, 912 F.2d 878, 881 (6th Cir. 1990).  However, if relief is no longer available in state court, exhaustion can be rendered moot:  "If no remedy exists, and the substance of a claim has not been presented to the state courts, no exhaustion problem exists; rather, it is a problem of determining whether cause and prejudice exist to excuse the failure to present the claim in the state courts."  *Rust v. Zent*, 17 F.3d 155, 160 (6th Cir. 1994); *see Buell v. Mitchell*, 274 F.3d 347, 349 (6th Cir. 2001).

**B.    Procedural Default Standard**

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren v. Mitchell*, 440 F.3d 754, 763 (6th Cir.2006) (*citing Wainwright v. Sykes*, 433 U.S. 72, 87 (1977)). A claim may become procedurally defaulted in two ways. *Id.*  First, a petitioner may procedurally default a claim by failing to comply with state procedural rules in presenting his claim to the appropriate state court.  *Id.*; *see also Maupin v. Smith*, 785 F.2d 135, 138 (6th Cir. 1986). If, due to petitioner's failure to comply with the procedural rule, the state court declines to reach the merits of the issue, and the state procedural rule is an independent and adequate

-8-

grounds for precluding relief, the claim is procedurally defaulted.[2] *Id.*

Second, a petitioner may also procedurally default a claim by failing to raise and pursue that claim through the state's "ordinary appellate review procedures." *O'Sullivan v. Boerckel*, 526 U.S. 838, 848 (1999). If, at the time of the federal habeas petition, state law no longer allows the petitioner to raise the claim, it is procedurally defaulted. *Engle v. Isaac*, 456 U.S. 107, 125 n. 28 (1982); *see also Coleman v. Thompson*, 501 U.S. 722, 731-32 (1991). This second type of procedural default is often confused with exhaustion. Exhaustion and procedural default, however, are distinct concepts. AEDPA's exhaustion requirement only "refers to remedies still available at the time of the federal petition." *Engle*, 456 U.S. at 125 n. 28. Where state court remedies are no longer available to a petitioner because he failed to use them within the required time period, procedural default and not exhaustion bars federal court review. *Id.* In Ohio, a petitioner is not entitled to raise claims in post-conviction proceedings where those claims could have been raised on direct appeal. *Id.* Thus, if an Ohio petitioner failed to raise a claim on direct appeal, which could have been raised, the claim is procedurally defaulted. *Id.*

A claim is adequately raised on direct appeal if it was "fairly presented" to the state court. To fairly present a claim to a state court a petitioner must assert both the legal and factual basis for his claim. *See McMeans v. Brigano*, 228 F.3d 674, 681 (6th Cir. 2000). Accordingly, a "petitioner must present his claim to the state courts as a federal constitutional issue--not merely

---

[2] In *Maupin*, the Sixth Circuit established a four-step analysis to determine whether a claim is procedurally defaulted. 785 F.2d at 135. Under this test, the Court decides (1) whether the petitioner failed to comply with an applicable state procedural rule, (2) whether the state courts actually enforced the state procedural sanction, (3) whether the state procedural bar is an "independent and adequate" state ground on which the state can foreclose federal review, and (4) whether the petitioner has demonstrated "cause" and "prejudice." *Id.* at 138-39; *Barkley v. Konteh*, 240 F.Supp.2d 708 (N.D. Ohio 2002).

as an issue arising under state law." *Koontz v. Glossa*, 731 F.2d 365, 368 (6ᵗʰ Cir. 1984).  A

petitioner can take four actions in his brief which are significant to the determination as to

whether a claim has been fairly presented as a federal constitutional claim: "(1) reliance upon

federal cases employing constitutional analysis; (2) reliance upon state cases employing federal

constitutional analysis; (3) phrasing the claim in terms of constitutional law or in terms

sufficiently particular to allege a denial of a specific constitutional right; or (4) alleging facts

well within the mainstream of constitutional law." *Newton v. Million*, 349 F.3d 873, 877 (6ᵗʰ Cir.

2003).

  A petitioner's procedural default, however, may be excused upon a showing of "cause"

for the procedural default and "actual prejudice" from the alleged error.  *See Maupin*, 785 F.2d at

138-39.  "Demonstrating cause requires showing that an 'objective factor external to the defense

impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434

F.3d 412, 417 (6ᵗʰ Cir. 2006) (*quoting Murray v. Carrier*, 477 U.S. 478, 488 (1986)).

Meanwhile, "[d]emonstrating prejudice requires showing that the trial was infected with

constitutional error."  *Id*.  Where there is strong evidence of a petitioner's guilt and the evidence

supporting petitioner's claim is weak, the actual prejudice requirement is not satisfied.  *See*

*United States v. Frady*, 456 U.S. 152, 172 (1982); *Perkins v. LeCureux*, 58 F.3d 214, 219-20 (6ᵗʰ

Cir. 1995); *Rust v. Zent*, 17 F.3d 155, 161-62 (6ᵗʰ Cir. 1994).  Prejudice does not occur unless

petitioner demonstrates "a reasonable probability" that the outcome of the trial would have been

different.  *See Mason v. Mitchell*, 320 F.3d 604, 629 (6ᵗʰ Cir. 2003) (*citing Strickler v. Greene*,

527 U.S. 263, 289 (1999)).

  Finally, a petitioner's procedural default may also be excused where a petitioner is

actually innocent in order to prevent a "manifest injustice." *See Coleman v. Thompson*, 501 U.S. 722, 749-50 (1991). Conclusory statements are not enough – a petitioner must "support his allegations of constitutional error with new reliable evidence-whether it be exculpatory scientific evidence, trustworthy eyewitness accounts, or critical physical evidence-that was not presented at trial." *Schlup v. Delo*, 513 U.S. 298, 324 (1995)*; See Jones v. Bradshaw*, 489 F.Supp.2d 786, 807 (N.D.Ohio 2007).

### 1. Grounds One, Four, and Six

Respondent asserts that grounds one, four, and six are procedurally defaulted. (ECF No. 10 at 20-21, 33, 38.)

In ground one, Wilson claims that he was denied "due process requirement of notice" when he was indicted with "carbon copy indictments not providing Defendant with adequate notice of charges against [him]." (ECF No. 1.) Wilson argues that the indictment was vague thereby placing him twice in jeopardy. (ECF No. 1-2 at 25.) In addressing this claim, the state appellate court held as follows:

> [*P17] In his first assignment of error, appellant contends that his acquittal on the first two counts of rape precluded his conviction on count three, which was identical to counts one and two. He claims this outcome placed him in jeopardy twice for the same offense. We disagree. Appellant had a single trial at which he was found guilty of only one of the three charges of rape he was alleged to have committed on June 23, 2007. The remaining two charges were dismissed with prejudice, so they cannot be tried again. There was no double jeopardy. The only way a double jeopardy issue will arise is if appellant's conviction on count three is reversed and the state wishes to retry him. *Cf. State v. Ogle*, Cuyahoga App. No. 87695, 2007 Ohio 5066; *Madsen v. McFaul* (N.D. Ohio 2009), 643 F. Supp. 2d 962.
>
> [*P18] In connection with his first assignment of error, appellant refers to case law concerning the sufficiency of the indictment. **Appellant did not raise this issue in the trial court, so we will review it for plain error**. Although neither the indictment nor the bill of particulars distinguished the three rape charges from

one another, the state presented testimony at trial that would have supported multiple convictions of rape.  See, e.g., *State v. Salahuddin*, Cuyahoga App. No. 90874, 2009 Ohio 466; *State v. Cunningham*, Cuyahoga App. No. 89043, 2008 Ohio 803. Therefore, we overrule the first assignment of error.

*Wilson*, 2010-Ohio-6015 at ¶¶17-18 (emphasis added).

In ground four, Wilson asserts that he was deprived of due process when the trial court failed to give limiting instructions regarding "prior bad acts" testimony.  (ECF No. 1.)  Wilson argues in ground three that the testimony of witness K.H. should not have been admitted, however, once allowed, a limiting instructions should have been given.  In addressing this claim, the state appellate court held as follows:

[*P23]  Appellant next complains that the court failed to give the jury a limiting instruction about the use of this testimony.  **Appellant's counsel did not request a limiting instruction from the court, so we must consider whether the failure to give a limiting instruction was plain error**.  *State v. Shaw*, Montgomery App. No. 21880, 2008 Ohio 1317, P13.  While a limiting instruction should have been given, we cannot say that the court's failure to give such an instruction affected appellant's "substantial rights" or that a limiting instruction would have altered the outcome of this case. Crim.R. 52(B); *State v. Moreland* (1990), 50 Ohio St.3d 58, 62, 552 N.E.2d 894.  Therefore, we overrule the fourth assignment of error.

*Wilson*, 2010-Ohio-6015 at ¶23 (emphasis added).

In ground six, Wilson asserts that he was deprived of due process when the trial court failed to instruct the jury that it was required to unanimously agree on which of the three types of sexual conduct in evidence supported his rape convictions.[3]  (ECF No. 1-2 at 37.)  In addressing

---

[3]  Respondent asserts that the factual bases for Counts 1, 2 and 3 were clearly delineated and, therefore, Wilson was not prejudiced.  (ECF No. 10 at 22.)  Respondent points to the following: (1) after the jury was sworn, the trial court explained that the prosecution would have to prove that the rape counts were supported by separate instances of sexual conduct (Tr. 374-75); during opening statements, the State explained its theory that there were multiple instances of "sexual conduct," including oral, anal, and vaginal penetration (Tr. 378-79); the victim testified that she was raped orally, vaginally, and anally (Tr. 411-13, 418); the jury was instructed on the three types of conduct

this claim, the state appellate court held as follows:

> [*P25]  Sixth, appellant asserts that he was deprived of his right to a unanimous
> verdict because the court's instructions did not require the jury to agree about the
> act of sexual conduct that constituted the offense in order to find appellant guilty
> of rape.  **Again, appellant did not raise this issue below, so we review it for
> plain error.**  Appellant provides no legal authority for this proposition and we
> find none.  A jury need not agree on the specific act that constituted the offense.
> *Schad v. Arizona* (1991), 501 U.S. 624, 631-32, 111 S.Ct. 2491, 115 L.Ed.2d 555.
> Therefore, we overrule the sixth assignment of error.

*Wilson*, 2010-Ohio-6015 at ¶25 (emphasis added).

In Ohio, a petitioner waives an alleged error when he fails to make a contemporaneous

objection. *Osborne v. Ohio*, 495 U.S. 103, 124, 110 S. Ct. 1691, 109 L. Ed. 2d 98 (1990)

(recognizing Ohio's long-standing contemporaneous objection rule).  The Sixth Circuit has held

that Ohio's "contemporaneous- objection rule is an adequate and independent state ground

barring federal habeas review, *Biros v. Bagley*, 422 F.3d 379, 387 (6th Cir. 2005), and that

plain-error review is not inconsistent with the procedural default."  *Awkal v. Mitchell*, 613 F.3d

629, 648-649 (6th Cir. 2010) (citing *Lundgren v. Mitchell*, 440 F.3d 754, 765 (6th Cir. 2006));

*Hinkle v. Randle*, 271 F.3d 239, 244 (6th Cir. 2001).  "The state court's plain error review did not

constitute a waiver of the procedural default."  *Mason v. Brunsman*, 483 Fed. Appx. 122, 130-31

(6th Cir. 2012); *see also Shafer v. Wilson*, 364 Fed. Appx. 940, 945 (6th Cir. 2010) (finding that

the State of Ohio expressly enforced its contemporaneous objection rule where "the last state

court to render a reasoned opinion in this case, the Ohio Court of Appeals on direct appeal, noted

the failure to object, applied plain-error review, and denied [appellant's] claims for relief").

In the instant matter, Wilson did not object to the sufficiency of the indictment at any

---

constituting rape (Tr. 732-33); and, during closing argument, the State argued to the jury
that the victim was raped "vaginally, anally, orally. Three separate counts." (Tr. 757.)

point prior to appeal, and did not request any specific limiting instructions or jury instructions related to the aforementioned issues.  Accordingly, the first three elements of *Maupin* test are satisfied as Wilson failed to comply with the contemporaneous objection rule, the state appellate court actually enforced the rule, and the rule constitutes an "independent and adequate" state ground on which the state can foreclose federal review.  As such, grounds one, four, and six are procedurally defaulted under *Maupin*.

Federal courts will not consider the merits of procedurally defaulted claims, unless the petitioner demonstrates cause for the default and prejudice resulting therefrom, or where failure to review the claim would result in a fundamental miscarriage of justice.  *See Lundgren*, 440 F.3d at 763 (citing *Wainwright*, 433 U.S. at 87.)  "Demonstrating cause requires showing that an 'objective factor external to the defense impeded counsel's efforts to comply' with the state procedural rule."  *Franklin v. Anderson*, 434 F.3d 412, 417 (6th Cir. 2006) (quoting *Murray v. Carrier*, 477 U.S. 478, 488 (1986).  Here, Wilson has neither presented any cause for his default nor has he alleged ensuing prejudice or a manifest miscarriage of justice.  In addition, Wilson has not presented a credible claim of actual innocence.

## IV.  Review on the Merits

This case is governed by the Antiterrorism and Effective Death Penalty Act of 1996 ("AEDPA"), 28 U.S.C. § 2254.  *See Lindh v. Murphy*, 521 U.S. 320, 326-27, 337 (1997).  The relevant provisions of AEDPA state:

> An application for a writ of habeas corpus on behalf of a person in custody pursuant to the judgment of a State court shall not be granted with respect to any claim that was adjudicated on the merits in State court proceedings unless the adjudication of the claim–
>
>> (1) resulted in a decision that was contrary to, or involved an unreasonable

-14-

> application of, clearly established Federal law, as determined by the Supreme Court of the United States; or
>
> (2) resulted in a decision that was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding.

28 U.S.C. § 2254(d) (1996).

Clearly established federal law is to be determined by the holdings of the United States Supreme Court.  *See Parker v. Matthews,* 132 S. Ct. 2148, 2012 WL 2076341, *6 (U.S. Jun. 11, 2012); *Renico v Lett,* 559 U.S. –, 130 S.Ct. 1855, 1865-1866 (2010); *Williams v. Taylor*, 529 U.S. 362, 412 (2000); *Ruimveld v. Birkett*, 404 F.3d 1006, 1010 (6th Cir. 2005).  However, an explicit statement by the Supreme Court is not mandatory; rather, "the legal principles and standards flowing from [Supreme Court] precedent" also qualify as "clearly established law." *Ruimveld*, 404 F.3d at 1010 (*quoting Taylor v. Withrow*, 288 F.3d 846, 852 (6th Cir. 2002))  The Supreme Court has indicated, however, that circuit precedent does not constitute "clearly established Federal law, as determined by the Supreme Court." *Parker*, 2012 WL 2076341, *6; *Howes v. Walker,* 132 S.Ct. 2741, 2012 WL 508160 (2012).

A state court's decision is contrary to clearly established federal law "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." *Williams v. Taylor*, 529 U.S. at 413.  By contrast, a state court's decision involves an unreasonable application of clearly established federal law "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." *Id*.  However, a federal district court may not find a state court's decision unreasonable "simply because that court

-15-

concludes in its independent judgment that the relevant state court decision applied clearly established federal law erroneously or incorrectly." *Id.* at 411.  Rather, a federal district court must determine whether the state court's decision constituted an objectively unreasonable application of federal law.  *Id.* at 410-12.  "This standard generally requires that federal courts defer to state-court decisions." *Strickland v. Pitcher*, 162 Fed. Appx. 511, 516 (6th Cir. 2006) (*citing Herbert v. Billy*, 160 F.3d 1131, 1135 (6th Cir. 1998)).

In *Harrington v. Richter*, —— U.S. ——, 131 S.Ct. 770, 178 L.Ed.2d 624 (2011), the Supreme Court held that as long as "fairminded jurists could disagree on the correctness of the state court's decision," relief is precluded under the AEDPA.  *Id.* at 786 (internal quotation marks omitted).  The Court admonished that a reviewing court may not "treat[ ] the reasonableness question as a test of its confidence in the result it would reach under *de novo* review," and that "even a strong case for relief does not mean the state court's contrary conclusion was unreasonable." *Id.* at 785.  The Court noted that Section 2254(d) "reflects the view that habeas corpus is a guard against extreme malfunctions in the state criminal justice systems" and does not function as a "substitute for ordinary error correction through appeal." *Id.* (internal quotation marks omitted).  Therefore, a petitioner "must show that the state court's ruling ... was so lacking in justification that there was an error well understood and comprehended in existing law beyond any possibility for fairminded disagreement." *Id.* at 786–87.  This is a very high standard, which the Supreme Court readily acknowledged.  *See id.* at 786 ("If this standard is difficult to meet, that is because it is meant to be.")

**A.  Ground Two: Self Representation**

In ground two, Wilson asserts he was deprived of his right to act as his own counsel and

that the trial court failed to conduct an adequate inquiry into his request to do so.  (ECF No. 1.)

He contends that he requested to represent himself on January 9, 2009, March 26, 2009, and July

8, 2009.[4]  (ECF No. 1-2 at 28.)  The Sixth and Fourteenth Amendments guarantee criminal

defendants the right to represent themselves at trial.  *Faretta v. California*, 422 U.S. 806, 833-34

(1975); *United States v. Cromer*, 389 F.3d 662, 680 (6th Cir. 2004).  In addition, "a criminal

defendant in federal court has a right to represent himself or herself at sentencing."  *United*

*States v. Jones*, 489 F.3d 243, 248 (6th Cir. 2007).  An unconstitutional denial of the right of self-

representation is a structural error for which the remedy is a new trial.[5]  *Jones v. Jamrog*, 414

F.3d 585, 594 (6th Cir. 2005).  The scope of the right of self-representation is a legal question

that is reviewed *de novo*.  *Jones*, 489 F.3d at 247.  "The exact contours of the right to self-

representation, however, depend on the nature of the proceeding."  *Jones*, 489 F.3d at 248.

To trigger the right of self-representation, two conditions must be satisfied.  First, the

accused must "knowingly and intelligently" waive the right to counsel after having been

apprised of "the dangers and disadvantages of self-representation."  *Faretta*, 422 U.S. at 835.

Second, a defendant's request for self-representation must be made clearly and unequivocally.

*Raulerson v. Wainwright*, 469 U.S. 966, 969–70, 105 S.Ct. 366, 83 L.Ed.2d 302 (1984); *United*

*States v. Martin*, 25 F.3d 293, 295 (6th Cir. 1995).  The right to self-representation is "waived if it

---

[4]  However, Wilson also avers that "[o]n the morning of trial the defendant told the court
that he wanted to replace his appointed counsel with another attorney that had been
retained by his family."  (ECF No. 1-2 at 31.)

[5]  "Since the right of self-representation is a right that when exercised usually increases
the likelihood of a trial outcome unfavorable to the defendant, its denial is not amenable
to 'harmless error' analysis.  The right is either respected or denied; its deprivation
cannot be harmless."  *McKaskle v. Wiggins*, 465 U.S. 168, 177 (1984).  *McKaskle* is
instructive on the right to standby counsel.

is not timely and unequivocally asserted." *Jackson v. Ylst*, 921 F.2d 882, 888 (9th Cir. 1990).

The right to self-representation also may be waived through conduct that indicates that the

defendant is vacillating on the issue or has abandoned his request altogether. *Wilson v. Walker*,

204 F.3d 33, 37 (2d Cir. 2000). Therefore, although a defendant has the right to represent

himself in criminal proceedings, "the right to self-representation is not absolute." *Martinez v.*

*Court of App. of Cal.*, 528 U.S. 152, 161, 120 S.Ct. 684, 145 L.Ed.2d 597 (2000).

 In *Faretta*, the Supreme Court found voluntary and intelligent waiver where "weeks before

trial, [the defendant] clearly and unequivocally declared to the trial court that he wanted to

represent himself and did not want counsel." [*Faretta*,] 422 U.S. at 835, 95 S.C.t at 2541. The

record affirmatively showed that Faretta was "literate, competent, and understanding, and that he

was voluntarily exercising his informed free will." *Robards v. Rees*, 789 F.2d 379, 383 (6th Cir.

1986). Further, the defendant in *Faretta* had "a genuine inclination to conduct his own defense,

and demonstrated an ability to do so." *Id*.

 "Even where the right to self-representation is clearly invoked, it must be done . . . in a

timely manner, and courts will balance any such assertion against considerations of judicial

delay." *Heard v. Sherry*, 2011 WL 2710702, *6 (E.D. Mich. Jul. 13, 2011) (*quoting U.S. v.*

*Martin*, 25 F.3d 293, 295-96 (6th Cir. 1994)). In *Robards*, 789 F.2d at 383, the Sixth Circuit

ruled that the state trial court did not err in denying the habeas petitioner's motion to represent

himself when the motion was not made until the first day of trial and after the clerk had called

the roll of jurors. *Id*. The *Robards* Court concluded that the petitioner's request for self

representation, if honored by the trial court, "would have impermissibly delayed the

commencement of the trial." *Id*. at 384. Although a self-representation request is typically

timely if made prior to the selection and swearing of the jury, the Sixth Circuit held that such a

request is not timely "when the prosecution makes an affirmative showing that the defendant's

request for self-representation is merely a tactic to secure a delay in the proceeding." *Robards*,

789 F.2d at 383.

> The state appellate court addressed Wilson's claim as follows:
>
>> [*P19]  Second, appellant asserts that the court failed to conduct an adequate
>> inquiry concerning appellant's request to represent himself.  Appellant repeatedly
>> told the court that he did not want to represent himself.  He objected to every
>> attorney who was appointed to represent him, and said he wanted to select his
>> attorney himself.  "In general, an indigent defendant does not have a
>> constitutional right to choose the attorney who will represent him or her at state
>> expense."  *State v. Fry*, 125 Ohio St.3d 163, 2010 Ohio 1017, 926 N.E.2d 1239,
>> P64.  A substitution of counsel may be warranted if the defendant shows good
>> cause. *State v. Murphy*, 91 Ohio St.3d 516, 523, 2001 Ohio 112, 747 N.E.2d 765.
>> In this case, the court conducted extensive inquiries about the bases for
>> appellant's complaints about his attorneys and substituted counsel for appellant
>> twice.  Appellant has not demonstrated that the court failed to conduct an
>> adequate inquiry. Therefore, the second assignment of error is overruled.

*Wilson*, 2010-Ohio-6015 at ¶19.

In the instant case, the state appellate court did not unreasonably apply federal principles

when it determined that Wilson's Sixth Amendment right to represent himself was not abridged,

where Wilson did not clearly invoke such right.  On January 8, 2009, the trial court held a

hearing during which Wilson's appointed counsel from the Public Defender's Office orally

moved to withdraw.  (ECF No. 10-5, Tr. 4.)  At the time, Wilson stated that he had previously

indicated he did not want an attorney, did not want to participate in the criminal proceedings, and

was "going to represent himself."  *Id*. at 7.  Wilson went on to say that he did not know much

about the law.  *Id*. at 8-10.  In response the Court asked Wilson: "If you agree that you're not

that well versed or knowledgeable about what your rights are and what the proceedings are, et

cetera, don't you think you'd be better off with a lawyer?"  *Id*. at 12.  Wilson's response was

equivocal.  He agreed he would be better off if he had an honest attorney who kept him well

informed, but worried that he would not be able to comprehend "until it's too late."  *Id*.  At the

same hearing, Wilson stated that he would like to have an attorney assigned to him as "co-

counsel."  *Id*. at 16.  The trial court concluded the hearing by stating as follows:

> What I want to do now is I'm going to find a lawyer to represent you.  I will have
> that lawyer meet with you, represent you.  And if you continue after some time of
> this lawyer representing you to believe that you want to represent yourself, which
> -- you've got a right to ask for that.  You've got a right to ask to represent
> yourself.

(ECF No. 10-5, Tr. 21.)  Wilson responded that he understood the trial judge and agreed.[6]  *Id*. at

21-22.

The court held a hearing on March 26, 2009 to address Wilson's motion to represent

himself.  (ECF No. 10-5, Tr. 55.)  When the Court directly asked Wilson if he wanted his

counsel removed, he did not answer but complained of being uninformed.  *Id*. at 70.  When the

Court again asked Wilson if he wanted represent himself, Wilson was equivocal but finally

stated that "I'm not asking to represent myself."  *Id*. at 71-75.  When Wilson's counsel, John

Carson, moved the Court to resign from the case due to the perceived mistrust his client had for

him, the court asked Wilson whether he wanted Mr. Carson to remain as his counsel.  *Id*. at 83.

Wilson did not answer the question directly, but stated that "[i]f he's going to represent me, I

want him to represent me properly."  *Id*.  When the court again asked if he wanted to keep Mr.

Carson or proceed by himself, Wilson responded that he did not know how to answer the

---

[6]  Wilson was appointed counsel the next day, though he expressed that he wanted to act
as his own co-counsel.  (ECF No. 10-5, Tr. 47.)  Wilson expressed a belief that he could
not be prosecuted due to his failure to understand the law.  *Id*.

question, and even stated that "I didn't file a motion to be my own counsel." *Id*. at 86-87.

On July 8, 2009, Wilson was being represented by new counsel, Rufus Sims.  (ECF No. 10-5, Tr. 92.)  Wilson stated that he was "not letting Mr. Sims represent [him].  He can be my counsel, he can counsel me, but he can't represent me.  I represent myself."  (ECF No. 10-5, Tr. 93.)  Wilson repeatedly interrupted the Court, would not answer questions, asserted his sovereignty, and apparently rejected the authority of the court, the county and the Constitution. *Id*. at 93-99.  At one point, Wilson had even asked for the prosecutor to serve as his counsel.  *Id*. at 104.

Based on erratic and inconsistent positions taken by Wilson during pretrial proceedings, this Court cannot say that Wilson made a clear and unequivocal request for self representation. Therefore, the state appellate court's decision was not contrary to nor an unreasonable application of clearly established federal law.

**B.  Ground Three: Prior Bad Acts**

In ground three of his petition, Wilson argues that he was deprived of due process when the trial court permitted introduction of "prior bad acts."  (ECF No. 1.)  Wilson argues that the testimony of witness K.H. should not have been admitted.  Specifically, he cites her testimony that: on June 23, 2007, Wilson physically assaulted her; forced her into his car; and, that she felt she was not free to leave due to Wilson possessing a 9 mm pistol.  (ECF No. 1-2 at 32-33.) Wilson asserts this evidence was introduced to show that he is a bad person.  *Id*.

Wilson's petition relies solely on state evidentiary law.  The state court clearly construed his claim as raising an issue of state law.  The United States Supreme Court has repeatedly stated that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S.

764, 780 (1990); *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984). Errors in the application of state law, especially rulings regarding the admission or exclusion of evidence, are usually not to be questioned in a federal habeas corpus proceeding. *Coleman v. Mitchell*, 244 F.3d 533, 542-543 (6th Cir. 2001); *Cooper v. Sowders*, 837 F.2d 284, 286 (6th Cir. 1988). To be entitled to relief in federal habeas corpus a petitioner must establish that there has been an infringement of a right guaranteed under the United States Constitution. *Clemmons v. Sowders*, 34 F.3d 352, 357 (6th Cir. 1994). As a general rule, an error of state law in the admissibility of evidence does not constitute such a denial and is not cognizable in habeas corpus. *Byrd v. Collins*, 209 F.3d 486, 528 (6th Cir. 2000), *cert. denied*, 531 U.S. 1082 (2001). Under the AEDPA, the states have wide latitude in ruling on evidentiary matters. *Seymour v. Walker*, 224 F.3d 542 (6th Cir. 2000), *cert. denied*, 532 U.S. 989 (2001). In considering a habeas corpus petition a federal court may not grant such petition merely because it disagrees with the evidentiary rulings of the state courts, but may only grant relief if the state court's evidentiary rulings were contrary to rulings of the United States Supreme Court on a similar question of law or if the state courts decided the evidentiary issues differently than the Supreme Court in a case with materially indistinguishable facts. *Sanders v. Freeman*, 221 F.3d 846 (6th Cir. 2000). The state court found no error in the admission of this evidence explaining as follows:

> [*P20] The third assignment of error claims the court erred by allowing K.H. to testify about appellant's other "bad acts." K.H. testified that appellant struck her and forced her into his car, and she did not feel free to leave because he had a gun in the car. The state urges that this evidence was relevant to demonstrate appellant's "plan, scheme, or system."
>
> [*P21] The decision to admit or exclude relevant evidence is within the sound discretion of the trial court. *State v. Bey* (1999), 85 Ohio St.3d 487, 490, 1999 Ohio 283, 709 N.E.2d 484. Under Evid.R. 404(B), "[e]vidence of other crimes, wrongs, or acts is not admissible to prove the character of a person in order to

-22-

show action in conformity therewith. It may, however, be admissible for other purposes, such as proof of motive, opportunity, intent, preparation, plan, knowledge, identity, or absence of mistake or accident." R.C. 2945.59 also provides: "In any criminal case in which * * * the defendant's scheme, plan, or system in doing an act is material, any acts of the defendant which tend to show * * * the defendant's scheme, plan, or system in doing the act in question may be proved, whether they are contemporaneous with or prior or subsequent thereto, notwithstanding that such proof may show or tend to show the commission of another crime by the defendant."

[*P22]  K.H. and L.C. gave similar testimony about how they came to be in appellant's car and how appellant treated them thereafter.  They both testified that they met appellant when he drove up next to them in his car, that they been with appellant casually before this incident, and appellant gave them clothing.  We find the court did not abuse its discretion by allowing this testimony to demonstrate that appellant had used the same methods to acquire both victims.

*Wilson*, 2010-Ohio-6015 at ¶¶20-22.

The state appellate court did not address Wilson's claim as a federal constitutional due process claim.  When an evidentiary ruling is so egregious that it results in a denial of fundamental fairness, it may violate due process and thus warrant habeas relief.  *Coleman*, 244 F.3d at 542; *Seymour v. Walker*, 224 F.3d 542, 552 (6th Cir. 2000).  Nonetheless, "courts 'have defined the category of infractions that violate 'fundamental fairness' very narrowly.'"  *Wright v. Dallman*, 999 F.2d 174, 178 (6th Cir. 1993) (*quoting Dowling v. United States*, 493 U.S. 342, 352, 110 S.Ct. 668, 107 L.Ed.2d 708 (1990)).  "Generally, state-court evidentiary rulings cannot rise to the level of due process violations unless they 'offend[ ] some principle of justice so rooted in the traditions and conscience of our people as to be ranked as fundamental.'"  *Seymour*, 224 F.3d at 552 (*quoting Montana v. Egelhoff*, 518 U.S. 37, 43, 116 S.Ct. 2013, 135 L.Ed.2d 361 (1996)).

In *Bugh v. Mitchell*, 329 F.3d 496, 512 (6th Cir. 2003), the Sixth Circuit addressed a similar argument where the claimant asserted that certain evidence was so prejudicial that "it poisoned

-23-

the trial and violated [his] right to a fundamentally fair trial," because it served only to demonstrate that he was a "bad man."  The *Bugh* court held that "the admission of prior bad acts evidence was not contrary to clearly established Supreme Court precedent.  There is no clearly established Supreme Court precedent which holds that a state violates due process by permitting propensity evidence in the form of other bad acts evidence."[7]  *Id.* at 512; *accord Paige v. Bradshaw*, 2007 U.S. Dist. LEXIS 93324 (N.D. Ohio Apr. 4, 2007) (containing a lengthy discussion of the common law roots of the rule against the admission of propensity evidence, but ultimately finding that federal habeas courts cannot find that state court rulings allowing propensity or other acts evidence are contrary to, or involve an objectively unreasonable application of, clearly established federal law.)  In *Estelle*, 502 U.S. 62, 75 (1991), the Supreme Court declined to hold that the admission of prior acts evidence violated due process.  The *Estelle* Court stated in a footnote that, because it need not reach the issue, it expressed no opinion as to whether a state law would violate due process if it permitted the use of prior crimes evidence to show propensity to commit a charged crime.  *Id.* at 75 n. 5, 112 S.Ct. 475.  While the Supreme Court has addressed whether prior acts testimony is permissible under the Federal Rules of Evidence, *see Old Chief v. United States*, 519 U.S. 172 (1997); *Huddleston v. United States*, 485 U.S. 681 (1988), it has not explicitly addressed the issue in constitutional terms.

Absent any clearly established Supreme Court precedent to the contrary, this Court cannot find that Wilson was denied a fundamentally fair trial due to the admission of the challenged testimony of K.H.

---

[7] Notably, the *Bugh* court was also confronted with a situation where the state court did not address the federal issue.

## C.    Ground Five: Unrelated Sexual Conduct

Wilson also asserts that he was deprived of due process and a fair trial when the trial court permitted the introduction of "unindicted sexual conduct unrelated to the offenses charged." (ECF No. 1.)  This claim also involves testimony from witness K.H.  Specifically, Wilson challenges the admission of the following testimony by K.H.: (1) on June 23, 2007, Wilson made her lay on the floor and perform oral sex on the victim, L.C., while L.C. performed oral sex on Wilson; and, (2) on an earlier occasion, in April of 2007, she heard Wilson having sex with a woman named Kisha.  (ECF No. 1-2 at 35-36.)  Wilson argues that the admission of this evidence violated O.R.C. § 2907.02(D).[8]  The state court found no error explaining as follows:

> [*P24]  Appellant also complains that the court allowed evidence of his other
> sexual activity. K.H. testified that she heard appellant and Kisha "having sex"
> when she was at his house.  The court struck this testimony and instructed the jury
> to disregard it.  K.H. also testified that appellant made her perform oral sex on
> L.C. while L.C. was performing oral sex on appellant.  This testimony concerned
> the events that were the basis of the crime charged.  It cannot be characterized as
> evidence of "other sexual activity."  Therefore, the fifth assignment of error is
> overruled.

*Wilson*, 2010-Ohio-6015 at ¶24.

First, the testimony of K.H. with respect to Wilson's sexual activity with Kisha was *not* admitted.  It was stricken and the trial court expressly instructed the jury "not to consider a specific instance of the defendant's sexual activity with the person identified as Kisha."  (Tr.

_____

[8]  In relevant part, O.R.C. § 2907.02(D) states: "Evidence of specific instances of the defendant's sexual activity, opinion evidence of the defendant's sexual activity, and reputation evidence of the defendant's sexual activity shall not be admitted under this section unless it involves evidence of the origin of semen, pregnancy, or disease, the defendant's past sexual activity with the victim, or is admissible against the defendant under section 2945.59 of the Revised Code, and only to the extent that the court finds that the evidence is material to a fact at issue in the case and that its inflammatory or prejudicial nature does not outweigh its probative value."

-25-

522.)  Wilson's other argument again challenges an evidentiary ruling which is generally not cognizable unless it is so egregious that it results in a denial of fundamental fairness.  Although it is not this Court's function to challenge or review state court interpretations of state law, this Court wholly agrees that K.H.'s testimony concerning Wilson's forced sexual activities with the victim, L.C., on June 23, 2007, the date of the charges in the indictment, is part and parcel of the charged conduct (*i.e.* five counts of rape).  Therefore, it was not barred under O.R.C. § 2907.02(D).

**D.    Ground Seven: Sufficiency of the Evidence**

In ground seven of the petition, Wilson asserts that his motion for judgment of acquittal was improperly denied where all the elements of the offense were not found beyond a reasonable doubt.  (ECF No. 1.)  Respondent construes this ground for relief as challenging the sufficiency of the evidence.  (ECF No. 10 at 40.)  This Court will also address sufficiency.  Although Wilson refers to the manifest weight standard in his petition (ECF No. 1-2 at 41), manifest weight claims are not cognizable on federal habeas review.[9]  *See, e.g., Nash v. Eberlin*, 437 F.3d 519, 524 (6th Cir. 2006); *accord Hess v. Eberlin*, 2006 WL 2090093 at *6 (S.D. Ohio 2006).

The Due Process clause of the Fourteenth Amendment requires that a criminal conviction

---

[9]    As explained by the U.S. District for the Southern District of Ohio, "under Ohio law, a claim that a verdict was against the manifest weight of the evidence-as opposed to one based upon insufficient evidence-requires the appellate court to act as a 'thirteenth juror' and review the entire record, weigh the evidence, and consider the credibility of witnesses to determine whether 'the jury clearly lost its way and created such a manifest miscarriage of justice that the conviction must be reversed and a new trial ordered.'" *Hess*, 2006 WL 2090093 at *7 (*quoting State v. Martin*, 20 Ohio App.3d 172, 175, 485 N.E.2d 717 (Ohio Ct. App. 1983).  Because a federal district court does "not function as an additional state appellate court, vested with the authority to conduct such an exhaustive review," this Court cannot consider whether Wilson's conviction was against the manifest weight of the evidence.  *Id*.

be supported by proof beyond a reasonable doubt with respect to every fact necessary to constitute the offense charged. *In re Winship*, 397 U.S. 358, 363-64 (1970). The standard for determining if a conviction is supported by sufficient evidence is "whether after reviewing the evidence in the light most favorable to the prosecution, any rational trier of fact could have found the essential elements of the crime beyond a reasonable doubt." *Jackson v. Virginia*, 443 U.S. 307, 317 (1979).

> The state appellate court addressed this claim as follows:

>> [*P26] Seventh, appellant contends that the court erred by denying his motion for acquittal. He questions L.C.'s credibility because she omitted facts from her police statements. He also claims there was no physical evidence of a gun or knife or the pliers that appellant used, or of the injuries L.C. suffered. These arguments challenge not the sufficiency of the evidence but the weight of it. They do not demonstrate that the court erred by denying his motion for acquittal.

*Wilson*, 2010-Ohio-6015 at ¶26.

While the state court's decision was not an unreasonable determination of the facts in light of the evidence presented, this Court has conducted its own independent review. The jury found Wilson guilty of three counts of rape (as charged under Counts 3, 5 and 6) and two counts of kidnapping (as charged under Counts 4 and 7). (ECF No. 10, Exh. 4.)

The victim, L.C., testified at trial to the following. On June 23, 2007, Wilson pulled up to a gas station and instructed her to get in his car; he had a gun in his lap when he told her to get inside. (Tr. 405-08.) K.H. was in the car with Wilson. (Tr. 407.) L.C. did as instructed and Wilson drove the two women to a house on Holmden avenue. (Tr. 407, 409-10.) Wilson had a pair of pliers and threatened to cut off L.C.'s nipples and clitoris. (Tr. 411.) Wilson made both L.C. and K.H. remove their clothes. *Id.* Wilson made K.H. "put her mouth on me" and raped L.C. vaginally and anally. *Id.* She did not want Wilson to do this and asked him to stop. (Tr.

412-13.)  She was in the house with Wilson and K.H. for approximately 20 to 30 minutes.  (Tr.

413.)  Wilson then drove them to a house on East 55th street.  (Tr. 414.)  Inside the house on East

55th, L.C., K.H., and a woman named Kisha were locked in a room with Wilson.  (Tr. 418-19.)

Wilson made L.C. and K.H. undress and forced them to perform oral sex on him.  (Tr. 417-18,

410.)  Against her will, Wilson forced L.C. to engage in vaginal intercourse with him again.  (Tr.

419.)  The next morning, Wilson told L.C. to shower.  (Tr. 419-20.)  L.C. turned on the water,

but escaped through a window and ran to the nearest shopping plaza and called the police.  (Tr.

421.)

The essence of Wilson's argument is that there are inconsistencies, omissions, and

contradictions in L.C.'s statements and testimony.  (ECF No. 1-2 at 39-41.)  However, in making

such a determination, a district court may not substitute its own determination of guilt or

innocence for that of the factfinder, nor may it weigh the credibility of witnesses.  *See id.*;

*Walker v. Engle*, 703 F.2d 959, 970 (6th Cir. 1983).  Moreover, federal courts are required to give

deference to factual determinations made in state court and "[a]ny conflicting inferences arising

from the record ... should be resolved in favor of the prosecution."  *Heinish v. Tate*, 9 F.3d 1548,

1993 WL 460782 (6th Cir. 1993) (unpublished opinion), *citing Walker*, 703 F.3d at 969-70;

*Wright v. West*, 505 U.S. 277, 296 (1992) (the deference owed to the trier of fact limits the

nature of constitutional sufficiency review.)  Under Ohio law, a conviction for rape does not

require the presence of physical evidence. *See, e.g., State v. Johnson*, 858 N.E.2d 1144, 112 Ohio

St. 3d 210, 217, 2006-Ohio-6404 (Ohio 2006) (rejecting a sufficiency of the evidence claim

based on a lack of physical evidence of rape); *accord State v. Ward*, 2010-Ohio-6462 at ¶62,

2010 Ohio App. LEXIS 5363 (Ohio Ct. App., Dec. 28, 2010); *see also State v. Love*, 550 N.E.2d

-28-

951, 49 Ohio App. 3d 88, 91 (Ohio Ct. App. 1988) ("no requirement, statutory or otherwise, that a rape victim's testimony be corroborated as a condition precedent to conviction.")[10]

This Court cannot find that there was insufficient evidence simply because Wilson believes that the testimony of L.C. was not credible.  As such, viewing the evidence in the light most favorable to the prosecution, a rational trier of fact could have found Wilson guilty of three counts of rape and two counts of kidnapping beyond a reasonable doubt.

**E.    Ground Eight: Double Jeopardy/Allied Offenses**

Wilson argues in ground eight of his petition that he was denied due process and "subjected to Double Jeopardy" when the trial court refused to merge allied offenses of similar import stemming from the same conduct.  (ECF No. 1.)   Specifically, Wilson asserts that the two kidnapping convictions should have merged with the rape convictions, because they were incidental to those convictions.  (ECF No. 1-2 at 42-43.)

> [*P27]  Appellant next claims the court erred by failing to merge the kidnaping and rape charges because the kidnaping was incidental to the rape.  The restraint here was clearly not incidental to the rape. L.C. was forced into a vehicle and driven to two different houses where she was raped.  She was kept in a locked room overnight afterward.  A separate animus exists for the rapes and kidnapings. See, e.g., *State v. Greathouse*, Montgomery App. No. 21536, 2007 Ohio 2136. Therefore, we overrule the eighth assignment of error.

*Wilson*, 2010-Ohio-6015 at ¶27.

The Double Jeopardy Clause of the Fifth Amendment to the United States Constitution, which was made applicable to the states through the Fourteenth Amendment, provides that no person shall "be subject for the same offence to be twice put in jeopardy of life or limb."  This

---

[10]  However, the sequence of events as described by L.C. is largely consistent with the trial testimony of K.H.  (Tr. 537-43.)  Though K.H. does not mention the two instances of vaginal rape described by L.C., the other events are described in a similar fashion.  *Id.*

clause protects criminal defendants not only from successive prosecutions for the same offense, but also from multiple punishments for the same offense.  *See Brown v. Ohio*, 432 U.S. 161, 165 (1977).  In *Blockburger v. United States*, 284 U.S. 299, 304 (1932), the Supreme Court established the "same elements" test, which requires courts to determine whether a charged offense "requires proof of an additional fact which the other does not."

The state appellate court's finding — that the rape and kidnapping convictions do not violate the double jeopardy clause because each conviction had a separate animus — is not an unreasonable application of clearly established federal law nor was it based upon an unreasonable determination of the facts in light of the evidence presented.  *See, e.g., Thomas v. Brunsman*, 2008 U.S. Dist. LEXIS 118323 (S.D. Ohio, Nov. 5, 2008) ("because the rape and the kidnapping each had a separate animus, the Ohio Court of Appeals' adjudication of petitioner's double jeopardy claim was neither contrary to nor involved an unreasonable application of clearly established federal law as determined by the Supreme Court in addressing double jeopardy 'multiple punishment' violations and was reasonable in light of the evidence presented at petitioner's state criminal trial."); *Spence v. Sheets*, 675 F. Supp. 2d 792, 825 (S.D. Ohio 2009) (finding the state court's conclusion that evidence reflected separate criminal acts due to the prolonged restraint and movement of the victims did not violate the Double Jeopardy Clause); *McKitrick v. Smith*, 2009 U.S. Dist. LEXIS 35638 (N.D. Ohio April 21, 2009) (trial court's finding that petitioner had "separate animi" for robbery and kidnapping is due deference in habeas proceedings and therefore petitioner's convictions did not violate *Blockburger*).

The facts corroborate the state court's finding that Wilson restrained the victim, L.C., for a prolonged and substantial amount of time, and this restraint was significantly independent of the

actual rape offenses.  The first kidnapping offense was committed when L.C. was taken, by force or threat of force, on June 23, 2007 from a gas station and transported against her will to a house on Holmden avenue.  The second kidnapping occurred on the night of June 23, 2007 until the morning of June 24, 2007, when Wilson prevented L.C. from leaving the house on Grand avenue, in the area of East 55th Street, by locking her in the room with him and the other victim. These events were sufficient to support separate kidnapping convictions.

To the extent Wilson is challenging the state court's determination under O.R.C. § 2941.25, the U.S. Supreme Court has stated many times that "federal habeas corpus relief does not lie for errors of state law." *Lewis v. Jeffers*, 497 U.S. 764, 780 (1990); *accord Estelle v. McGuire*, 502 U.S. 62 (U.S. 1991) *see also Pulley v. Harris*, 465 U.S. 37, 41 (1984).  "More particularly, a claim that the trial court violated state law when sentencing a prisoner ... is not cognizable in a federal habeas corpus proceeding." *Mayse v. Morrow*, 2008 U.S. Dist. LEXIS 22711 at *25 (M.D. Tenn. Mar. 20, 2008).[11]  "Insofar as petitioner alleges that the two crimes should be merged because involving related acts, he raises a matter of state law, see Ohio Rev.Code § 2941.25, resolved against him in the state courts.  This state law question is not cognizable in federal habeas corpus." *Heard v. Jago*, 515 F. Supp. 162, 167 (S.D. Ohio 1980); *see also Davie*

---

[11]  The *Mayse* decision noted that "[i]t does not appear that [t]he Sixth Circuit has held in a published opinion that violations of state law in sentencing is not cognizable in a federal habeas corpus proceeding.  However, the Sixth Circuit has so held in numerous unpublished opinions. *See Terry v. Trippett*, No. 94-2077, 1995 U.S. App. LEXIS 23150, 1995 WestLaw 469424, at *1 (6th Cir. (Mich.)); *Lunsford v. Hofbauer*, No. 94-2128, 1995 U.S. App. LEXIS 9479, 1995 WestLaw 236677, at * 2 (6th Cir. (Mich.)); *Wilcox v. Littlefield*, No. 94-3625, 1995 U.S. App. LEXIS 4724, 1995 WestLaw 98822, at * 2 (6th Cir. (Ohio)); *Cheatham v. Hosey*, No. 93-1319, 1993 U.S. App. LEXIS 30105, 1993 WestLaw 478854, at * 2 (6th Cir. (Mich)); *Johnson v. Abramajtys*, No. 91-1465, 1991 U.S. App. LEXIS 30356, 1991 WestLaw 270819, at * 10 (6th Cir. (Mich.))."

*v. Mitchell*, 291 F. Supp. 2d 573, 590 (N.D. Ohio 2003) ("The petitioner's contention that a violation of state law resulted from the trial court's failure to merge the offenses is not cognizable in this federal habeas corpus proceeding.")  Based on the foregoing, Wilson fails to present a cognizable claim.

## F.  Grounds Nine and Ten: Sentence

In ground nine of the petition, Wilson asserts that he was deprived of due process when the trial court sentenced him to life.  In ground ten, Wilson claims that he was deprived of due process when the trial court imposed consecutive sentences without considering the statutory criteria.  (ECF No. 1.)

These two grounds for relief are moot, as Wilson actually prevailed on ground nine before the state appellate court as explained below:

> [*P28]  In his ninth assignment of error, appellant argues that the court erred by sentencing him to a term of life imprisonment rather than an indefinite prison term.  We must agree with appellant that the court incorrectly sentenced him to a term of life imprisonment on each of the rape charges.  Having been found guilty of rape in violation of R.C. 2907.02(A)(2) with sexually violent predator specifications, appellant was subject to an indefinite prison term "consisting of a minimum term fixed by the court that is not less than ten years, and a maximum term of life imprisonment," pursuant to R.C. 2971.03(A)(3)(d)(ii).  The trial court here did not impose an indefinite term of imprisonment.  Rather, it imposed a prison term of "life" on each of the rape charges.  This sentence was erroneous as a matter of law.

> [*P29]  We also note that the court plainly erred by sentencing appellant to twenty years imprisonment on the two kidnaping charges.  On these charges, the court was also required to impose an indefinite term of imprisonment, consisting of a minimum fixed term of not less than ten years and a maximum term of life.  R.C. 2971.03(A)(3)(b).  Therefore, we vacate the sentences imposed on all of the offenses and remand for resentencing in accordance with R.C. 2971.03.

> [*P30]  Appellant's tenth assigned error challenges the court's imposition of consecutive sentences.  This assignment of error has been rendered moot by our disposition of the ninth assignment of error.

*Wilson*, 2010-Ohio-6015 at ¶¶28-30.

Respondent asserts that these two grounds for relief are moot or unexhausted.  (ECF No 10 at 53.)  The Court disagrees that they are unexhausted, but does agree that they have been rendered moot by the state appellate court's decision.  Respondent notes that a resentencing hearing has not yet occurred.  *Id.*  Though the Court is troubled by such a long delay, Wilson does not appear to have challenged this through state court filings.

**G.    Grounds Eleven and Twelve: Sexually Violent Predator Specification**

In ground eleven, Wilson asserts that he was deprived of due process when the indictment "failed to contain [an] allegation of any of the elements of the sexually violent predator enhancements."  (ECF No. 1.)  He further asserts in ground twelve that there was insufficient evidence to support all the elements of the sexually violent predator specification.  Wilson's arguments are not entirely clear.  As Wilson is proceeding *pro se*, the Court has consulted the brief filed by Wilson's appellate counsel in state court.  Unfortunately, appellate counsel's brief on these issues fails to offer much, if any clarification.  (ECF No. 10-11 at 37-40.)  The Court construes ground eleven as challenging the sufficiency of the indictment as it relates to the specification.

With respect to these two issues, the state appellate court found as follows:

[*P31]  The final two assignments of error contend that appellant was deprived of due process by his conviction and sentences for sexually violent predator specifications.  First, he claims the indictment was insufficient because it did not allege any of the elements the state had to prove to convict him of that specification.  R.C. 2941.148(A)(2) provides that the specification must be in substantially the form in which it appeared in each count of the indictment in this case.  A specification is not an offense in itself, and therefore the indictment need not charge every "element" needed to prove the specification.  Moreover, the "elements" appellant cites are merely factors the jury can consider in determining if the defendant is likely to commit a sexually violent offense in the future.  *State*

-33-

*v. Ferrell*, Cuyahoga App. No. 92573, 2010 Ohio 1201, P48-52.

[*P32]  Appellant finally claims the evidence was insufficient to support the sexually violent predator specification.  He argues that there was no evidence relating to some of the factors the jury was told they could consider in determining whether appellant was likely to engage in the future in one or more sexually oriented offenses.  The prosecution did not have to provide evidence supporting every one of these factors.  Therefore, we overrule the twelfth and final assignment of error.

*Wilson*, 2010-Ohio-6015 at ¶¶31-32.

It is well settled that the federal guarantee of a grand jury indictment does not apply to the states.  *See, e.g., Koontz v. Glossa*, 731 F.2d 365, 369 (6th Cir. 1984) (*citing Branzburg v. Hayes*, 408 U.S. 665 (1972)); *accord Riffel v. Erwin*, 2005 U.S. Dist. LEXIS 11666 (S.D. Ohio 2005).  In addition, "the Constitution does not require any particular state indictment rule ... [or] an indictment at all if sufficient notice of the charges is given in some other manner."  *Id.* (*citing Combs v. Tennessee*, 530 F.2d 695 (6th Cir.) *cert. denied*, 425 U.S. 954 (1976)).  Nevertheless, the Due Process Clause of the Fourteenth Amendment requires that a state must give a criminal defendant "fair notice" of the charges against him to permit adequate preparation of his defense.  *See Williams v. Haviland*, 467 F.3d 527, 535 (6th Cir. 2006); *Koontz*, 731 F.2d at 369; *Blake v. Morford*, 563 F.2d 248 (6th Cir. 1977).  The fair notice requirement is met when a charged offense "[is] described with some precision and certainty so as to apprise the accused of the crime with which he stands charged."  *Id.*  "To pass constitutional muster, an indictment must meet a two-prong test: first, the indictment must set out all of the elements of the charged offense and must give notice to the defendant of the charges he faces; second, the indictment must be sufficiently specific to enable the defendant to plead double jeopardy in a subsequent proceeding, if charged with the same crime based on the same facts."  *United States v. Martinez*,

981 F.2d  867, 872 (6th Cir. 1992).

Here, the state court has determined that a sexually violent predator specification does not constitute an offense in itself; and, moreover, there are no "elements" but only "factors."  This Court cannot overrule a state court's interpretation of state law.  *See, e.g., Vroman v. Brigano*, 346 F.3d 598, 604 (6th Cir. 2003) ("Federal courts are obligated to accept as valid a state court's interpretation of state law and rules of practice of that state."); *see also Riley v. Woods*, 2010 U.S. Dist. LEXIS 81453, 11-12 (E.D. Mich., Aug. 11, 2010) ("A federal habeas court must therefore defer to a state appellate court's construction of the elements of state crimes.") (*citing Sanford v. Yukins*, 288 F. 3d 855, 862 (6th Cir. 2002); *Coe v. Bell*, 161 F. 3d 320, 347 (6th Cir. 1998)).

Furthermore, the indictment expressly gave Wilson notice of the sexually violent predator specification and referred to the relevant statute, Ohio Revised Code, § 2941.148.  (ECF No. 10-3, Exh. 3.)  The United States Supreme Court has held that "[i]t is generally sufficient that an indictment set forth the offense in the words of the statute itself, as long as 'those words of themselves fully, directly, and expressly, without any uncertainty or ambiguity, set forth all the elements necessary to constitute the offence intended to be punished.'"  *United States v. Carll*, 105 U.S. 611, 612 (1882); *Hamling v. United States*, 418 U.S. 87, 117-118 (1974); *accord United States v. McAuliffe*, 490 F.3d 526, 530 (6th Cir. 2007); *United States v. Jackson*, 327 F.3d 273, 290 (4th Cir. 2003).  As such, Wilson cannot reasonably argue that he was not given fair notice of the specification and the state court's ruling was neither an unreasonable application of nor contrary to clearly established federal law.

The issue Wilson attempts to raise in ground twelve is also less than clear.  Pursuant to

O.R.C. § 2971.01(H)(1), a sexually violent predator "means a person who, on or after January 1, 1997, commits a sexually violent offense and is likely to engage in the future in one or more sexually violent offenses."  The following *factors* may be considered as evidence tending to indicate that there is a likelihood that the person will engage in one or more sexually violent offenses in the future:

> (a)  The person has been convicted two or more times, in separate criminal actions, of a sexually oriented offense or a child-victim oriented offense. For purposes of this division, convictions that result from or are connected with the same act or result from offenses committed at the same time are one conviction, and a conviction set aside pursuant to law is not a conviction.

> (b)  The person has a documented history from childhood, into the juvenile developmental years, that exhibits sexually deviant behavior.

> (c)  Available information or evidence suggests that the person chronically commits offenses with a sexual motivation.

> (d)  The person has committed one or more offenses in which the person has tortured or engaged in ritualistic acts with one or more victims.

> (e)  The person has committed one or more offenses in which one or more victims were physically harmed to the degree that the particular victim's life was in jeopardy.

> (f)  Any other relevant evidence.

O.R.C. § 2971.01(H)(2).

As observed by the state appellate court, a finding that Wilson was a sexually violent predator did not require all of the above *factors* to be present.  The prosecution presented evidence that Wilson was previously convicted of rape, involuntary manslaughter, and child stealing.  (Tr. 830, 833.)  The above evidence, along with the evidence heard in the underlying action, was sufficient for a jury to find that Wilson committed a sexually violent offense and was likely to engage in the future in one or more sexually violent offenses.  Though it is questionable

-36-

whether ground twelve raises a cognizable claim on habeas review, Wilson's contention that

there was not a "shred of evidence" to support such a determination is simply untenable.

As such, grounds eleven and twelve are without merit.

### V.  Conclusion

For the foregoing reasons, it is recommended that Wilson's Petition be DENIED.

/s/ Greg White
U.S. MAGISTRATE JUDGE


Date: July 10, 2013



### OBJECTIONS
**Any objections to this Report and Recommendation must be filed with the Clerk of Courts within fourteen (14) days after the party objecting has been served with a copy of this Report and Recommendation.  Failure to file objections within the specified time may waive the right to appeal the District Court's order.  *See United States v. Walters*, 638 F.2d 947 (6th Cir. 1981).  *See also Thomas v. Arn*, 474 U.S. 140 (1985), *reh'g denied*, 474 U.S. 1111 (1986).**